IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MARIA GUADALUPE MARTINEZ, Individually, as a Legal Representative of the Estate of DELFINO GARCIA, and Next Friend of GEMMA GARCIA, a Minor, GRETCHELL GARCIA, a Minor, DELFINO GARCIA, JR., a Minor, and DELIA MACEDO, Next Friend of EMELY PARTICIA GARCIA, a Minor, <br><br> *Plaintiffs,* <br><br> v. <br><br> DONNIE FOSTER, COMMUNITY EDUCATION CENTERS, INC., JAGDISH A. SHAH, and JOHN DOES #1 THROUGH #35, <br><br> *Defendants* | § § § § § § § § § § § § § § § § § § § § | Civil Action No. 4:13cv59 |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiffs, proceeding with the assistance of counsel, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was referred to the undersigned United States Magistrate Judge for findings of fact, conclusions of law, and recommendations for the disposition of the case pursuant to 28 U.S.C. § 636 and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to the United States Magistrate Judge.

**BACKGROUND**

Delfino Garcia was arrested following the Federal Bureau of Investigation's investigation for suspicion of conspiracy to distribute and possess with the intent to distribute cocaine and

1

methamphetamine on January 19, 2011 (*see* Cause Number 4:11CR6(42))[1], and then taken to the Fannin County Jail on January 20, 2011, where he was held for approximately two weeks - until February 3, 2011. Mr. Garcia died 143 days later - on June 26, 2011. On September 30, 2011, the United States District Court granted the Government's motion to dismiss the federal charges in the Indictment against Mr. Garcia based on proof of Mr. Garcia's death, *See* Cause Number 4:11cr62(42), docket entries #940, 946.

## ALLEGATIONS BY PLAINTIFFS

In the instant civil rights action, Plaintiffs allege that when Mr. Garcia arrived at the Fannin County Jail, a CEC agent[2] noted that he was diabetic. Plaintiffs state that Dr. Shah prescribed Humilin R on a sliding scale via a telephone order on January 20, 2011.[3]

---

[1] Plaintiffs' erroneous assertion that Mr. Garcia was being held based on a non-federal charge that was later dismissed by a district attorney is disingenuous. The docket in Mr. Garcia's federal criminal case, Cause Number 4:11CR6(42), shows that an arrest warrant was issued on January 13, 2011, Mr. Garcia was arrested on January 19, 2011, and an Initial Appearance Hearing was held that same day, after which he was remanded to the custody of the U.S. Marshal. Mr. Garcia was being detained pursuant to the FBI's investigation after being charged for a federal offense. The court may take judicial notice of its own records. *See ITT Rayonier Inc., v. United States*, 651 F.2d 343, 345 n.2 (5th Cir. 1981).

[2] Plaintiffs refer to various John Does, who they contend are primarily agents for CEC. For ease of reference, "agent" will be used in this Report unless specifying a certain John Doe is required.

[3] Plaintiffs are inconsistent as to when they allege Mr. Garcia was detained in Fannin County Jail – January 19 or January 20 of 2011. The docket of Mr. Garcia's criminal case shows that he was arrested on January 19, 2011. However, Plaintiffs and Defendants both state that Mr. Garcia was initially taken to Parkland Hospital on January 19, 2011. It is likely that he was arrested on January 19, 2011, taken to Parkland Hospital, then upon release from the hospital, taken to Fannin County Jail on January 20, 2011. Plaintiffs later allege that Mr. Garcia was "admitted into the Center" on January 20, 2011, at 9:15 a.m. Regardless, a one-day discrepancy is not dispositive in this case.

Plaintiffs state that, prior to Mr. Garcia's arrest, his primary care physician prescribed metformin, glipizide, and prevastatin to manage his symptoms. Plaintiffs say that Mr. Garcia told his criminal attorney that the jail refused to prescribe his preferred medications and give him food that would not exacerbate his diabetes. They say that Mr. Garcia's attorney attempted to give the prescription to a jail agent, but was told that "it was the Center's policy not to give inmates/detainees medication unless the physician under contract with the facility (Defendant Jagdish Shah) obtained the inmate/detainee's prescription directly from the physician under contract with the Center."

Plaintiffs state that Mr. Garcia daily asked for his preferred medications and a special diabetic meal plan, but that agents refused. Plaintiffs concede that agents checked Mr. Garcia's blood glucose levels, as a general rule, twice a day except for two exceptions, but that his levels were usually in excess of 240 mg/dL and, on 9 occasions, exceeded 400 mg/dL. They concede that Dr. Shah examined Mr. Garcia on January 26, 2011, for Mr. Garcia's scheduled appointment. Mr. Garcia again requested his preferred medications, but Dr. Shah did not prescribe them. Plaintiffs state that on January 26, 2011, Dr. Shah increased Mr. Garcia's insulin dosage and prescribed glyburide 5 mg in the mornings based on Mr. Garcia's elevated glucose levels. Plaintiffs also concede that Dr. Shah noted that Mr. Garcia's blood sugar levels should be watched closely - if needed a few times per day.

Plaintiffs assert that on February 1-3, Mr. Garcia complained of nausea, vomiting, pain, and trouble walking. They state that another inmate notified an agent that Mr. Garcia was hot, shaking, and convulsing. Plaintiffs state that Mr. Garcia was given pepto, ibuprofen, and promethazine for the nausea, vomiting, and pain. They then assert that Mr. Garcia requested a wheelchair on February 2 to go to medical for a blood glucose level check, but was told by an

agent that he would have to walk to medical. Plaintiffs state that the agent then asked that Mr. Garcia sign a treatment refusal sheet, but he refused to do so. On February 3, 2011, Plaintiffs state that Mr. Garcia's blood sugar level was 539, he was found nonresponsive in his cell, and was taken to see Dr. Shah. They state that Dr. Shah ordered that he be sent to the hospital because of hypotension - low blood pressure. Plaintiffs concede that the last note in Mr. Garcia's treatment records was when Dr. Shah sent him to the hospital. They then suggest that Mr. Garcia was not transported to the hospital for another six days. However, in other parts of their complaint, they concede that Mr. Garcia was sent to the hospital on February 3, 2011, where he was kept until February 8, 2011. They allege that as a result of ketoacidosis experienced while in Fannin County Jail for the two weeks between January 20 and February 3, 2011, he died on June 26, 2011.

Plaintiffs claim that CEC was acting under the color of state law, was a private for-profit corporation providing jail management services for Fannin County. They note that CEC and Fannin County entered into a contract in 2008 for three years. They assert that, per the agreement, CEC was to (1) provide food and beverages, routine medical/sick call, non-routine medical care, including onsite nurses, medical technicians, (2) contract with a medical doctor, and (3) interview, hire, train, assign, manage, promote, and compensate all members of the CEC's administration and staff. They then allege that John Does 1-10 are employees/agents of CEC who are licensed nurse practitioners, licensed vocational nurses, and /or licensed registered nurses. They assert that John Does No. 11-28 are correctional officers employed by CEC in charge of guarding inmates/detainees and notifying CEC's medical service providers when an inmate requires medical attention. Plaintiffs assert that John Does 29-35 are other companies, organizations, and/or individuals that were in charge, supervised, managed, directed, trained,

supplied, and/or controlled the jail personnel. Plaintiffs assert that CEC delegated the responsibility to a medical supervisor to determine whether an inmate requires immediate medical attention. They then allege that CEC has a "widespread practice and pattern of its employees refusing to treat its inmates/detainees' serious medical conditions."

Plaintiffs next allege that, as the sheriff of Fannin County, Sheriff Foster was a "keeper of the county jail with a duty to safely keep all prisoners committed to the jail." They further allege that, according to the agreement between CEC and Fannin County, Sheriff Foster was to periodically monitor the operation of the jail, including an on-site inspection twice a month and review reports from CEC. Plaintiffs allege Sheriff Foster is responsible for Mr. Garcia's alleged deficient medical care individually, in his official capacity, and through the actions of CEC.

Finally, Plaintiffs allege that Dr. Shah was under contract with CEC to provide medical care for the jail, to be available for inmate/detainee care 24 hours a day, and to conduct regularly scheduled visits at the Center weekly. They assert that Dr. Shah acted recklessly and with deliberate indifference to Mr. Garcia's condition. Plaintiffs state that, during Mr. Garcia's appointment with Dr. Shah on January 26, 2011, Dr. Shah called Mr. Garcia's primary care physician to obtain pre-detention prescriptions, but did not prescribe Mr. Garcia's preferred medications. They assert Dr. Shah changed Mr. Garcia's prescription to 70/30 insulin units in the morning, 10 units in the evening, and 5 mg of glyburide. Plaintiffs allege that, between January 26, 2011 and February 3, 2011 ("when Mr. Garcia was sent to the hospital"), Dr. Shah's treatment was limited to pepto, ibuprofen, and promethazine via telephone order. They assert that Dr. Shah is responsible for Mr. Garcia's alleged deficient medical care, which ultimately resulted in Mr. Garcia's death.

## DEFENDANTS' MOTIONS TO DISMISS

All Defendants allege that Martinez has no standing and/or capacity[4] to assert the Section 1983 claims. Dr. Shah asserts that Plaintiffs' medical malpractice claims and Section 1983 claims are barred by the statute of limitations as it concerns him. All Defendants allege that Plaintiffs fail to state a Section 1983 claim for inadequate medical care under the Eighth and Fourteenth Amendments as well as under Article I §§ 13 and 19 of the Texas Constitution. All Defendants allege that Plaintiffs fail to state a claim under the Texas wrongful death and survival statutes.

## UNDISPUTED FACTS

There are a number of facts about this case that are undisputed. It is without question that Donnie Foster was Sheriff at the Fannin County Jail at the time of Mr. Garcia's confinement. Defendant CEC does not deny that it provided management services at the Jail. Defendant Dr. Shah similarly does not deny that he provided medical services to Mr. Garcia. Nobody disputes that Mr. Garcia was held at the Fannin County Jail between January 20 and February 3, 2011, or that he was diabetic. They agree that Mr. Garcia was transferred to Red River Regional Hospital on orders of Dr. Shah on February 3, 2011, and he remained in the hospital until February 8, 2011. There is no dispute that Mr. Garcia died on June 26, 2011. In the broad context, Plaintiffs allege that it was the 14 days he spent in the Fannin County Jail without proper medical care that caused his blood sugar levels to be elevated and unregulated, requiring a hospital stay, leading to him ultimately being found unconscious, and eventually causing his death 4 months and 23 days later.

---

[4]Texas courts use the terms "standing" and "capacity" interchangeably. Martinez must have both standing and capacity to bring this lawsuit. The Texas Supreme Court explained the difference in *Austin Nursing Ctr., Inc. v. Lovata*, 171 S.W.3d 845, 850 n.3 (Tex. 2005).

**STANDING/CAPACITY**

As an initial matter, the court must examine Defendants' claims that Maria Guadalupe Martinez lacked capacity and/or standing to bring this lawsuit. Martinez filed this case in several different capacities, including purporting to be the legal representative of the Estate of Delfino Garcia. A close review of Plaintiffs' Third Amended Complaint shows that it contains no allegations showing the Estate of Delfino Garcia, as a legal entity, even exists and that Martinez is entitled under any provision of Texas law to pursue recovery on behalf of the Estate. Martinez also sues as Garcia's common-law wife, but fails to allege any of the elements required to establish a common-law marriage.

Standing is a prerequisite to subject matter jurisdiction. *King ex rel. Chaney v. Tex. Med. Bd.,* 576 Fed. App'x 353, 354 (5th Cir. 2014). Standing must be shown to provide an Article III court with subject matter jurisdiction over the case. *Id*. (citing *K.P. v. LeBlanc*, 729 F.3d 427, 436 (5th Cir. 2013)). A party must have standing under the State's wrongful death or survival statutes to bring a § 1983 claim. *Id*. Additionally, a party must have capacity to bring the claim. *See* Fed. R. Civ. P. 17(b); *Austin Nursing Ctr., Inc. v. Lovata*, 171 S.W.3d 845, 850 (Tex. 2005). To determine whether a party has capacity and/or standing under Sections 1981, 1983, and 1988, courts look to the state wrongful death or survival statute. *Pluet v. Frasier*, 355 F.3d 381, (5th Cir. 2004) (party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988); *Rhyne v. Henderson County*, 973 F.2d 386, 390-91 (5th Cir. 1992) (standing under Texas wrongful death and survival statutes is incorporated in the Federal Civil Rights Statutes); *Brazier v. Cherry*, 293 F.2d 401, 409 (5th Cir. 1961) (wrongful death allegedly resulting from violations of civil rights statute gives rise to federally enforceable claim for damages by virtue of state survival and wrongful death statute).

**Survival Claim**

The proper plaintiff in a survival action is the estate's personal representative, administrator, or an heir of the decedent. Tex. Civ. Prac. & Rem. Code § 71.021; *Shepherd v. Ledford*, 962 S.W.2d 28, 31 (Tex. 1997). Typically, a personal representative of the decedent's estate is the only person entitled to recover estate property. *Id.*; *Austin Nursing Ctr.*, 171 S.W.3d at 850. Martinez fails to set forth any facts showing that the Estate exists, and that she is the Estate's legal representative or administrator.

Martinez also purports to bring suit as Mr. Garcia's heir. An heir includes the surviving spouse and persons entitled to a part of the decedent's estate under the descent and distribution statutes. Tex. Estates Code Ann. § 22.015. A person dying intestate leaves his estate to his surviving spouse and children as heirs. *Id.*, § 201.002(b). Although Martinez alleges to be an heir as Mr. Garcia's common-law wife, she fails to set forth any facts of an informal marriage so as to be considered Mr. Garcia's heir.

When the spousal relationship exists by way of an informal marriage, proof of the informal marriage must exist. *Shepherd*, 962 S.W.2d at 32. A common-law marriage in Texas requires that (1) an agreement exists to be married, (2) after the agreement, the two lived as husband and wife, and (3) they represented to others that they were married. *Small v. McMaster*, 352 S.W.3d 280, 282-83 (Tex. App.–Houston [14th Dist.] 2011, pet. denied). A common-law marriage does not exist until all three elements have occurred. *Id.*; *Winfield v. Renfro*, 821 S.W.2d 640, 645 (Tex. App.–Houston [1st Dist.] 1991, writ denied). "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only fair notice of the nature of the claim, but also grounds on which the claim rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n. 3, 127 S. Ct. 1955, 1965, n. 3, 167

L. Ed.2d 929 (2007). Furthermore, Martinez was required to prove the elements of an informal marriage within two years from the time the relationship ended. Tex. Fam. Code § 2.401(b). Mr. Garcia died on June 26, 2011; thus, Martinez was required to establish her common-law marriage by June 26, 2013. There are no allegations that she has met this requirement.

Martinez also fails to present any plausible facts showing that, as an heir, she is entitled to bring the survival claim on the Estate's behalf. While an heir may be entitled to sue on behalf of the decedent's estate, if an heir files a survival action during the time period the law allows for instituting administration proceedings, she must also show either (1) no estate administration is pending and none is necessary, or (2) the personal representative cannot or will not bring suit. *Austin Nursing Ctr.*, 171 S.W.3d at 850-51; *Shepherd*, 962 S.W.2d at 31-32; *Stewart v. Hardie*, 978 S.W.2d 203, 207 (Tex. App.–Fort Worth 1998, pet. denied); *Lopez-Rodriguez v. City of Levelland*, No. 5:02CV073C, 2004 WL 1746045, *9 (N.D. Tex. Aug. 3, 2004) (for heir to bring survival action, she must plead and prove there is not a pending estate administration and none is necessary).

Furthermore, where someone is not the sole heir, and is entitled to only a portion of the estate, she is required to show that she and the other heirs reached an agreement that would eliminate the need for an estate administration. *Stewart*, 978 S.W.2d at 207. Similar to *Stewart*, Martinez brings the action "individually," and as "next friend" of the minor children. She fails to plead, however, that there is not a pending administration of Mr. Garcia's Estate and that administration is not necessary. She also fails to plead that she and the other heirs reached an agreement that would eliminate the need for an estate administration. Martinez wholly fails to plead any facts showing she has met these requirements.

**Wrongful Death Claim**

Wrongful death claims are separate and distinct from survival claims. *Stiles v. Union Carbide Corp.*, 520 F. Supp. 856, 867 (S.D. Tex. 1981). The Texas Wrongful Death Act allows surviving spouses, parents, and children to sue for actual damages arising from another person's death. Tex. Civ. Prac. & Rem. Code § 71.004(a); *see also In re Labatt Food Serv.*, L.P., 279 S.W.3d 640, 644 (Tex. 2009). As in survival claims, a common-law spouse bringing a wrongful death claim must prove the informal marriage. *Shepherd*, 962 S.W.3d at 31. Martinez fails to present any facts that she filed a proceeding to establish her common-law marriage and she fails to allege any of the required facts supporting the elements of common-law marriage. Thus, Martinez cannot show the existence of her marital status, and likewise, cannot show her capacity or standing to bring a wrongful death claim.

**Conclusion**

In sum, Plaintiffs fail to plead facts in the Third Amended Complaint showing that Martinez has capacity and/or standing to bring the lawsuit. It is not necessary to reach the remainder of Defendants' defenses in the motions to dismiss. The court has been very generous in allowing Plaintiffs multiple opportunities to properly plead this case. Defendants' motions to dismiss should be granted and Plaintiffs' case should be dismissed for the reasons stated above.

**RECOMMENDATION**

It is therefore recommended that Defendants' motions to dismiss be granted. It is also recommended that the case be dismissed without prejudice. Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)( C). In order to be specific, an objection must identify the specific finding or recommendation to which

objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object  *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 2nd day of March, 2016.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE