IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| MARIA GUADALUPE MARTINEZ, Individually, as a Legal Representative of the Estate of DELFINO GARCIA, and Next Friend of GEMMA GARCIA, a Minor, GRETCHELL GARCIA, a Minor, DELFINO GARCIA, JR., a Minor, and DELIA MACEDO, Next Friend of EMELY PARTICIA GARCIA,<br>        *Plaintiffs*,<br><br>v.<br><br>DONNIE FOSTER, COMMUNITY EDUCATION CENTERS, INC., JAGDISH A. SHAH, and JOHN DOES #1 THROUGH #35,<br>        *Defendants.* | § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. 4:13CV59 |

**MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Came on for consideration the Report and Recommendation of the Magistrate Judge (the "Report") in this action (Dkt. 140), this matter having been heretofore referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636, containing proposed findings of fact and recommendations that Defendant Community Education Centers, Inc.'s ("CEC") Amended Motion to Dismiss (Dkt. 126) be **GRANTED** in part and **DENIED** in part.

On March 24, 2017, Defendant CEC filed objections to the Report (*see* Dkt. 145). The court has made a *de novo* review of the objections raised by Defendant CEC and is of the opinion that the findings and conclusions of the Magistrate Judge are correct, and the objections are without merit as to the ultimate findings of the Magistrate Judge. The court hereby adopts

1

the findings and conclusions of the Magistrate Judge as the findings and conclusions of this court.

Plaintiffs brought this civil rights lawsuit under 42 U.S.C. § 1983, asserting the rights of Delfino Garcia ("Garcia"), deceased, a former pretrial detainee at the Fannin County Jail ("Fannin County"). Plaintiffs' claims against CEC rest on allegations that in 2008, CEC contracted with Fannin County to operate the Fannin County Jail for three (3) years, including providing necessary medical care to detainees during that period. Plaintiffs allege that CEC failed to fulfill its duties under the agreement with Fannin County. Specifically, Plaintiffs contend CEC and its agents had a "widespread practice and pattern of its employees refusing to treat its inmate/detainees' serious medical conditions." Dkt. 88 at 13. Plaintiffs further allege CEC provided inadequate training and supervision to its employees related to providing medical care to inmates and detainees.

## I. **PLAINTIFFS' 14TH AMENDMENT CLAIMS**

CEC objects to the Magistrate Judge's conclusion that Plaintiffs' Fourteenth Amendment claims should proceed. *See* Dkt. 140. First, CEC contends it is not subject to suit in this action because CEC was a private entity acting under color of federal law when it detained Garcia, a federal prisoner. *See* Dkt. 145 at 12. However, Garcia's status as a federal prisoner is neither disputed nor dispositive of the issue. The relevant inquiry is whether Garcia was *solely* a federal prisoner during his detention at Fannin County Jail. The Magistrate Judge considered this argument and properly concluded that, viewing Plaintiffs allegations in the light most favorable to Plaintiff, dismissal of the lawsuit for failure to name a state actor was not appropriate at this stage of the litigation. *See* Dkt. 140 at 10.

Citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), CEC invites the court to "draw on its judicial experience and common sense" in making this determination. *See* Dkt. 140 at 10. In the court's experience, however, inmates and detainees are frequently held simultaneously on both federal and state charges, pursuant to federal and state law. CEC also contends its contracts and agreements to house federal detainees at the Fannin County Jail, which are matters of public record, somehow prove that Garcia was *solely* in federal custody at the time of the allegations in this case. *See* Dkt. 145 at 14-15. However, CEC concedes that both federal and state prisoners were housed at the Fannin County Jail during Garcia's detention. *See* Dkt. 145 at 24.Thus, the existence of these contracts and agreements fail to support CEC's argument.

As the Magistrate Judge noted, "Plaintiffs plead simply that Garcia 'was arrested at his house on charges that were later dismissed' and, thereafter, "was admitted to the [Fannin County Jail].'" Dkt. 140 at 10 (quoting Dkt. 88 ¶¶ 14, 17). While the court's dockets and the parties' admissions definitively establish Garcia's status as a federal prisoner during his detention at Fannin County Jail, they do not address whether he was simultaneously held on state charges. Accordingly, the court agrees with the Magistrate Judge's conclusion that Plaintiffs' Fourteenth Amendment claims should not be subject to Rule 12 dismissal for failure to name a state actor. Accordingly, this objection is overruled.

CEC also renews its argument that Plaintiffs' Fourteenth Amendment claims fail to comport with federal pleading requirements and, accordingly, should be dismissed pursuant to Rule 12(b)(6). *See* Dkt. 145 at 16-28. CEC argues Plaintiffs' claims do not warrant relief insofar as they are based on a theory of vicarious liability and objects to the Magistrate Judge's purported failure to address the issue of vicarious liability in the Report. *See* Dkt. 145 at 16. However, CEC's basis for this objection is unclear as the Magistrate Judge expressly noted

3

CEC cannot be found liable on the basis of vicarious liability. *See* Dkt. 140 at 11. Moreover, it is implicit from the Report that the Magistrate Judge found only that Plaintiffs' direct liability Fourteenth Amendment claims against CEC should proceed.

CEC also objects to the Magistrate Judge's recommendation that Plaintiff's direct liability claims should proceed based on the finding that Plaintiffs' allegations establish an actionable corporate policy. *See* Dkt. 145 at 17. As explained in the Report, "a corporation performing a government function, such as managing a jail, is liable under § 1983 if the claimant demonstrates three elements: (1) a policymaker who can be held responsible; (2) an official policy or custom; and (3) a violation of constitutional rights whose 'moving force' is the policy or custom." Dkt.140 at 11 (citing *Olivas v. Corr. Corp. of Am.*, 408 F. Supp. 2d 251, 255 (N.D. Tex. 2006), aff'd, 215 F. App'x 332 (5th Cir. 2007) (internal citations omitted). Furthermore, a § 1983 claimant must plead the description of a policy or custom and its relationship to the underlying constitutional violation with specificity; conclusory allegations are not enough to withstand a motion to dismiss. *See Piotrowski v. City of Houston*, 237 F.3d 567, 579–80 (5th Cir. 2001).

CEC challenges the Magistrate Judge's conclusion that Plaintiffs described CEC's alleged policies with sufficient factual specificity to satisfy the pleading requirements. *See* Dkt. 145 at 17-22. However, the Report specifically takes note of Plaintiffs' allegations that "CEC and/or CEC's Medical Supervisor promulgated twelve (12) 'formal written explicit policies' aimed at denying or delaying medical treatment to detainees." Dkt. 140 at 11 (quoting Dkt. 88 at 27). Far from stating merely conclusory allegations, Plaintiffs allege their policy-related allegations with substantial specificity. *See* Dkt. 88 at 27-29. In pleading these allegations, Plaintiffs also cite several exhibits that provide evidentiary support for their factual assertions.

4

Taken as true, these allegations of specific policies adopted by CEC establish the existence of corporate policies, for which CEC can be held liable in this § 1983 action.

CEC also contends that, even if Plaintiffs successfully pled the existence of actionable policies, they failed to plead allegations that any such a policy caused or was the "moving force behind" the alleged violations of Garcia's Fourteenth Amendment rights. This argument lacks merit. Plaintiffs' Third Amended Complaint plainly alleges that the policy or custom was adopted or maintained by CEC's policymakers with deliberate indifference as to its known or obvious consequences. *See* Dkt. 88 at 27-29. Plaintiffs have asserted specific allegations that: (1) CEC adopted policies related to delaying and denying medical care to inmates and detainees; (2) CEC disregarded a known or obvious risk to inmate health and safety when they adopted these policies; and (3) Garcia's injuries were the direct and proximate result of CEC's policies. *See id*. These allegations comport with federal pleading requirements and are, therefore, sufficient to withstand CEC's motion to dismiss for failure to state a claim.

CEC also objects to the Magistrate Judge's conclusion that Plaintiffs' allegations regarding a corporate custom satisfies Fifth Circuit pleading requirements. *See* Dkt. 145 at 22-25. When the actions of employees are used to prove a custom for which a municipality or other corporation is liable, random acts and incidents are not enough; the "actions must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [ ] employees." *Holland v. City of Houston*, 41 F. Supp. 2d 678, 698 (S.D. Tex. 1999) (quoting *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984)). In other words, the corporation must have, at a minimum, constructive knowledge of the custom. To establish constructive knowledge, plaintiffs must demonstrate a true pattern of abuses. *Piotrowski,* 237 F.3d at 582.

A pattern requires sufficiently numerous prior incidents, not just isolated instances. *McConney v. City of Houston,* 863 F.2d 1180, 1184 (5th Cir. 1989).

Here, the Magistrate Judge evaluated Plaintiffs' corporate custom allegations and noted Plaintiffs' allegations that "four (4) prior lawsuits against CEC and its subsidiaries evince a widespread custom of denying or delaying medical care to detainees." Dkt. 140 at 11. CEC contends the lawsuits are inapposite because, "[t]his suit addresses operations in Fannin County and is limited to policies concerning treatment of diabetics." Dkt. 145 at 22. The court finds this argument disingenuous. As discussed previously, Plaintiffs have alleged CEC adopted corporate policies and/or customs of delaying or denying adequate medical care in general. *See* Dkt. 88 at 27-29. On the face of the Third Amended Complaint, these alleged policies and/or customs included, but were by no means exclusive to, diabetes-related care. *See, e.g.*, Dkt. 88 at 27-29. Furthermore, Plaintiffs do not assert such policies or customs existed only within the Fannin County Jail. To the contrary, they contend the policies and customs existed outside the Fannin County Jail in at least those facilities involved in the four (4) extraneous lawsuits. To the extent that CEC argues the four (4) lawsuits cited by Plaintiffs are not sufficiently numerous to establish a "true pattern of abuses," as required to show a corporate custom, Dkt. 145 at 24-25, the court finds this argument goes to the merits of Plaintiffs' substantive claim, not the legal sufficiency of their allegations for purposes of a Rule 12 motion.

CEC's argument that the Magistrate Judge's conclusion that Plaintiffs' failure to train and supervise claim comports with Fifth Circuit pleading requirements is similarly unavailing. *See* Dkt. 145 at 25-28. As discussed previously, Plaintiffs' Third Amended Complaint alleges CEC adopted and implemented twelve (12) formal policies related to the provision of inadequate medical care to inmates and detainees. *See* Dkt. 88 at 27-29. Taken as true, these

allegations establish that medical operations within CEC proceeded under a program of systematically providing deficient medical care to inmates and detainees, without regard to the obvious risk that such action would likely result in a violation of constitutional rights. That being the case, any training or supervision provided by CEC pursuant to this program is likely also inadequate.

Based on the foregoing, the court finds Plaintiffs' Third Amended Complaint satisfies federal custom pleading requirements, and Defendant CEC's objection on this point is overruled.

## II. PLAINTIFF MARTINEZ'S STANDING

Defendant CEC also objects to the Magistrate Judge's conclusion that Plaintiff Maria Martinez ("Martinez") has standing to assert a survival claim on behalf of Garcia's estate (the "Estate"). *See* Dkt. 145 at 11-12. CEC renews its argument that Martinez lacks capacity to assert claims on behalf of the Estate as Garcia's heir. *See id.*

It is well-settled under Texas law that the personal representative of a decedent's estate is generally the only person entitled to sue on the estate's behalf. *See Frazier v. Wynn*, 472 S.W.2d 750, 752 (Tex. 1971). Before an heir at law can maintain a suit to recover property belonging to the estate in her individual capacity as heir, she must allege and prove that there is no administration pending and none necessary. *See id.* However, Texas law does not preclude the possibility of a decedent's heir serving as the legal representative of the decedent's estate and filing suit to recover estate property in her representative capacity. *See Stewart v. Hardie*, 978 S.W.2d 203, 207 (Tex. App. 1998) ("An heir may be a personal representative."); *see also, Shepherd v. Ledford,* 926 S.W.2d 405, 413 (Tex. App. 1996), *writ granted* (Mar. 21, 1997), *aff'd and remanded,* 962 S.W.2d 28 (Tex. 1998) ("The Probate Code states that the terms

7

'personal representative' or 'representative' *include* an executor, independent executor, administrator, independent administrator and temporary administrator. Tex. Prob. Code Ann. § 3(aa) (Vernon 1980). Nothing in the wording of the subsection suggests that it is the exclusive list of persons who may become an estate's 'representative.'").

As noted in the Report, Plaintiffs have consistently asserted that Martinez is not only Garcia's heir, but the legal representative of the Estate. *See* Dkt. 140 at 7. As the legal representative of the Estate, Martinez is entitled to bring a lawsuit to recover Estate property whether or not estate administration is necessary. Accordingly, the court finds no error in the Magistrate Judge's conclusion that Plaintiffs have pled sufficient facts to establish Martinez's capacity to bring a survival action on behalf of the Estate.

### III. THE JOHN DOE DEFENDANTS

Finally, Defendant CEC challenges the Magistrate Judge's conclusion that Plaintiffs have not abandoned their claims against the John Doe defendants. *See* Dkt. 145 at 28-29. Although Defendant CEC correctly notes that Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), CEC argues Plaintiffs failed to meet this requirement when they included allegations against the John Doe defendants in the "Background Facts" section of their pleading, as opposed to the separate "Cause of Action" section. However, nothing in the language of Rule 8 requires a party to specifically label claims as such, include statements of claims in a particular section of a pleading, or otherwise delineate claims clearly stated in the pleading. Accordingly, the court finds this objection without merit.

## IV. CONCLUSION

Based on the foregoing, Defendant Community Education Centers, Inc.'s Amended Motion to Dismiss (Dkt. 126) is **GRANTED IN PART AND DENIED IN PART,** as follows: (1) Martinez's wrongful death claim against CEC on behalf of the Estate is **DISMISSED**; (2) Plaintiffs' claims against CEC pursuant to the Texas Constitution are **DISMISSED**; and (3) Plaintiffs' claims against CEC under the Eighth Amendment are **DISMISSED**. (4) Plaintiff's claims against CEC under the Fourteenth Amendment and their survival action on behalf of the estate shall proceed.

**IT IS SO ORDERED**.

**SIGNED this the 31st day of March, 2017.**

_____
RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE